### GEORGIA S. & F. RY. CO. et al. v. GEORGIA PUBLIC SERVICE COMMISSION et al.

(District Court, N. D. Georgia. May 8, 1923.)

No. 236.

1. **Courts ⬅263—Jurisdiction acquired by reason of federal question extends to all questions involved.**

Where a suit involves a federal question which gives a federal court jurisdiction, such jurisdiction extends to the determination of all questions involved in the case, including questions of state law, irrespective of the disposition made of the federal question, or whether it is found necessary to decide it at all.

2. **Carriers ⬅12(2)—Stock control of connecting road, separately operated, does not authorize treatment of the two roads as a continuous line for rate purposes.**

Const. Ga. art. 4, § 2, par. 1, and laws enacted pursuant thereto, conferring on the state Public Service Commission power to make reasonable and just freight rates, including reasonable and just joint rates for all connecting railroads, as to all traffic passing from one of said roads to the other, do not authorize the commission to prescribe a single continuous rate as to joint intrastate freight traffic moving over two connecting lines, owned and operated separately by different companies, because one company owns a controlling interest in the stock of the other.

3. **Carriers ⬅12(2)—Connecting lines operated by separate companies entitled to same treatment as to rates regardless of stock ownership.**

The fact that one railroad company owns a controlling interest in the stock of another company owning and operating a connecting line does not authorize the application of different rules as to traffic relations between them than those applied to other connecting lines.

In Equity. Suit by the Georgia Southern & Florida Railway Company and the Southern Railway Company against the Georgia Public Service Commission and others. On application for preliminary injunction. Granted.

C. J. Rixey, Jr., of Washington, D. C., and Sanders McDaniel, of Atlanta, Ga., J. E. Hall, of Macon, Ga., and W. N. McGehee, of Washington, D. C., for complainants.

George M. Napier, Atty. Gen. of Georgia, and E. J. Reagan, of McDonough, Ga., for defendants.

Before KING, Circuit Judge, and ERVIN and SIBLEY, District Judges.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KING, Circuit Judge.   On February 14, 1923, the Georgia Public Service Commission, after a hearing instituted by it, in the matter of prescribing continuous mileage rates within the state of Georgia over the Georgia Southern & Florida Railway and the Southern Railway, made the following order:

"That, effective on and after April 1, 1923, and until the further order of the commission, the maximum rates authorized for single line application between points on the Southern Railway Company shall be applied on all freight traffic between points on the Southern Railway Company and points on the Georgia Southern & Florida Railway, and between points on either of said railways, computed upon a continuous mileage basis the same as upon the line of a single railroad."

By subsequent order said commission postponed the effective date of said order of February 14 until May 1, 1923.   Prior to the passage of said order joint rates had been made on intrastate freight traffic moving between said railways under the operation of the rule of said commission known as "Freight Rule No. 27," providing for making joint rates on freight carried over two connecting roads, which prescribed that, where a shipment in reaching its destination is carried by two or more different and separately operated carriers, the charge for the combined services of transportation shall be the combination of the separately established rates of each carrier for its service, less 10 per cent.

The order of February 14th was promulgated under another rule of the commission, known as "Freight Rule No. 1," which prescribes:

"Where, in this state, two or more connecting lines of railroad are operated by or under one management or company, or where the majority of the stock of any railroad company is owned or controlled, either directly or indirectly, by a connecting railroad company, the lines of such company shall, within the meaning and intent of the rules of the commission, be considered as constituting but one and the same railroad, and rates for the carriage of freight over such railroads, or by any portion thereof, shall be computed upon a continuous mileage basis, the same as upon the line of a single railroad company, whether such railroads have separate boards of directors or not."

The Georgia Southern & Florida Railroad was built by a corporation chartered by the state of Georgia as the Georgia Southern & Florida Railroad Company.   This company failing, its property was sold at a foreclosure sale and was by the purchasers reincorporated as the Georgia Southern & Florida Railway Company.   There is no suggestion that the original promoters or builders of this railroad were in any way connected with the persons interested in the Southern Railway Company or its predecessors.   The Southern Railway Company is a corporation of the state of Virginia, chartered in the year 1894.   Shortly after its incorporation it acquired ownership of a majority of the shares of stock of the Georgia Southern & Florida Railway Company and now owns 69½ per cent. of said stock.   The proof shows that the balance of said stock is distributed among several hundred holders.   The two corporations are entirely separate in their organization, although the President of each corporation and the executive officers thereof are the same persons.   Some of the operating officers, especially those connected with traffic, are the same persons.   Such persons are, however, separately compensated by each corporation upon an

agreed proportion. All accounts are kept separately; express contracts and mail contracts are made separately by each corporation, and the operations of said railroad companies and their interchange of business is in general conducted in the same manner as exists between other connections and said respective complainants.

Said Southern Railway and said Georgia Southern & Florida Railway connect only at Macon, Ga. No continuous freight trains are operated over the tracks of said two roads, but interchange of freight traffic is conducted in the same manner as the interchange of such traffic with other roads at Macon. There is no evidence to indicate that the Georgia Southern & Florida Railway Company performs any less service in regard to freight traffic received by it from the Southern Railway Company than it does in regard to similar freight traffic received from any other connection at Macon, nor that the Southern Railway Company performs any less service in regard to traffic received from said Georgia Southern & Florida Railway Company than it performs in respect to similar traffic which it may receive from another connection at Macon. The evidence in said record does not show that the remuneration received by either complainant road under the operation of freight rule No. 27, providing joint rates between connecting carriers, exceeds a just and reasonable compensation for the service performed, or that its continuance in regard to business between the complainant roads would in any way exceed a just and reasonable rate for the service rendered.

The bill of complaint attacks the order of the commission prescribing the single mileage rates of the Southern Railway for such joint service, both as depriving each of complainants of substantial revenue and as operating so as to take its property for public use without just compensation in violation of the Fourteenth Amendment of the Constitution of the United States, and also attacks said order upon the ground that under the facts of this case it is beyond the power of the Public Service Commission vested in it by the Legislature of Georgia, and that freight rule No. 1, as applied to the facts in this case, is beyond the power of the commission to prescribe. While the evidence in the case clearly indicates as above stated that the existing joint rates as prescribed by rule 27, when applied to the freight traffic between complainant roads, do not afford more than just and reasonable compensation, the proof in this case is meager to the effect that the operation of the continuous mileage rate of the Southern on such traffic, in lieu of said joint rates, would be such a reduction as would be confiscatory within the meaning of the decisions governing this question.

[1] But the bill presents, not only this federal question, but also the question of the power to pass the order in this case under the Constitution and laws of Georgia. In this situation it is settled as to the jurisdiction of the federal courts:

"This being so, the jurisdiction of that [United States District] Court extended, and ours on appeal extends, to the determination of all questions involved in the case, including questions of state law, irrespective of the disposition that may be made of the federal question, or whether it be found necessary to decide it at all. Siler v. Louisville & Nashville R. R. Co., 213 U. S.

175, 191; Ohio Tax Cases, 232 U. S. 576, 586." Greene v. Louis & Interurban R. R. Co., 244 U. S. 499, 508, 37 Sup. Ct. 673, 677 (61 L. Ed. 1280, Ann. Cas. 1917E, 88); Davis v. Wallace, 257 U. S. 478, 42 Sup. Ct. 164, 66 L. Ed. 325.

[2] The power of said Public Service Commission to prescribe rates, either continuous upon a single railway or jointly for transportation upon two or more railways, is derived from the Constitution of the state of Georgia, which provides:

"The power and authority of regulating railroad freights and passenger tariffs, preventing unjust discriminations, and requiring reasonable and just rates of freight and passenger tariffs, are hereby conferred upon the General Assembly, whose duty it shall be to pass laws, from time to time, to regulate freight and passenger tariffs, to prohibit unjust discriminations on the various railroads of this State, and to prohibit said roads from charging other than just and reasonable rates, and enforce the same by adequate penalties" (Article 4, § 2, par. 1; Code of Ga. 1910, § 6463),

—and from the act creating said Public Service Commission (formerly known as the Georgia Railroad Commission) and acts amendatory thereof, which confer upon said commission the power to make reasonable and just rates for freight and passenger tariff to be observed by all railroad companies doing business in Georgia, to make reasonable and just rules and regulations for the conducting of their business and for preventing unjust discriminations, including the power to make just and reasonable joint rates for all connecting railroads doing business in said state, as to all traffic or business passing from one of said roads to the other. Acts Ga. 1878–79, p. 125; Acts Ga. 1889, p. 131 (Code Ga. 1910, § 2630).

In a case involving the determination of the powers of said commission as to making rates for connecting railroads, the Supreme Court of Georgia has declared:

"It will be observed that the act declares that the commissioners shall make 'just and reasonable joint rates for all connecting railroads doing business in this state, as to all traffic or business passing from one of said roads to another,' and that by the terms of the act the expression 'joint rates' is applied whether the roads are under the management and control of the same company or not. If they are not, the commissioners are required to give 30 days' notice of the joint rate contemplated, and of its division between the roads, and to allow hearings to roads desiring to make objection. If the commissioners can fix a continuous-mileage rate, the authority must be derived either from the general power to 'make reasonable and just rates,' or else from the special power to make joint rates, or from both. If it is given by the general authority to make reasonable and just rates, no limitation is stated as to applying it to connecting roads, save the constitutional and statutory restriction requiring it to be just and reasonable, not unreasonable and confiscatory." Hill v. Wadley Southern Railway Co., 128 Ga. 705, 712, 57 S. E. 795, 798.

It will be observed that the power of the commission is confined to making rates which are just and reasonable whether such rates be a single rate or joint rates, and further that no different power exists in said Public Service Commission in regard to making rates applicable to two or more railroads whether such railroads may be under the same or different control, except in so far as the unity of control may bear upon the question of the reasonableness of such rate.

It appeared, from the evidence in said case and the statements of

counsel, that the order of the commission directing that the continuous mileage rates of the Southern Railway Company should be applied on joint freight movements over the lines of said Southern Railway and said Georgia Southern & Florida Railway Companies was not prescribed as the result of an inquiry into the reasonableness and justness of said single rate thus used as a joint rate. It is charged in said bill of complaint that, upon inquiry as to the precise question to be decided:

"The Georgia Public Service Commission announced that it was distinctly not the purpose of the inquiry to examine into the propriety of any joint rates or to examine into the question of the fairness or reasonableness of any joint rate. Said Georgia Public Service Commission distinctly stated that the sole question was whether or not under the conditions found to exist as to the intercorporate relation between complainants, said freight rule No. 1, hereinabove set forth, would be applicable, and whether or not said freight rule is legal and ought to be applied to the conditions as found.

"Complainants, therefore, aver that the action of the defendant commission, herein complained of, was not based upon the establishment of any joint rate or rates, that no inquiry or investigation whatever was made by said defendant commission with respect to the reasonableness of any present joint rates already in existence, or any joint rates contemplated for the future, it having been distinctly stated by said defendant commission upon said hearing that the question presented for determination was as to the legality of its freight rule No. 1 (hereinbefore quoted) and the application of said rule to these complainants."

This paragraph of the bill is expressly admitted to be true in the answer of the commission. The question, therefore, in the present case, is whether said freight rule No. 1, in its application to railways occupying the relation to each other of the Georgia Southern & Florida and the Southern is authorized, and whether the Public Service Commission has authority to prescribe a single continuous rate as to joint intrastate freight traffic moving over said railroads because of such relation under the facts of this case.

We think the last question is controlling in this matter. In our opinion, the Constitution of Georgia and the statute creating said Public Service Commission, vesting in it the powers therein named to make just and reasonable rates and prevent discriminations, do not extend to a case such as the present, and so much of the rule No. 1 as attempts to prescribe that where the majority of the stock of a railroad company is owned or controlled directly or indirectly by a connecting railroad company the lines of such company shall within the meaning and intention of the rules of the commission be considered as constituting but one railroad, and freight rates thereon shall be computed upon a continuous mileage basis as upon the lines of a single railroad, is not warranted by said Constitution or Laws. That the ownership of either the whole or majority of the stock of one corporation by another does not constitute them a single corporation or render the stockowning corporation responsible for the acts and contracts of the other has been held by no court more distinctly than by the Supreme Court of Georgia. Exchange Bank v. Macon Construction Co., 97 Ga. 1, 25 S. E. 326, 33 L. R. A. 800; Waycross Railroad Co. v. Offerman, etc., Co., 109 Ga. 827, 35 S. E. 275.

This has also been clearly enunciated by the Supreme Court of the United States. In a case in which the Missouri Pacific Company had acquired all but about 1,195 of the 220,682 shares of capital stock of the St. Louis, Iron Mountain & Southern Company, and where five of its directors were also directors in said last company, where the general offices of the two companies were kept together and both roads were managed by the same persons, but where the separate corporate existence of each of the two companies was maintained, and the persons managing it were elected as its officers, the court held:

"Confessedly the St. Louis, Iron Mountain & Southern Company keeps up its own corporate organization. It operates its own road. It has its own officers and makes its own bargains. The Missouri Pacific owns all, or nearly all, its stock, and in that way can determine who shall constitute its board of directors; but there the power of that company over the management stops. The board, when elected, has controlling authority, and for its doings is not necessarily answerable to the Missouri Pacific Company. The two roads are substantially owned by the same persons and operated in the same interest, but that of the St. Louis, Iron Mountain & Southern Company is in no legal sense controlled by the Missouri Pacific. It is true the bill avers in many places and in many ways that the purchase of the stock of the St. Louis, Iron Mountain & Southern Company was made by the Missouri Pacific Company for the purpose and with the intent of getting the control of the road of the St. Louis, Iron Mountain & Southern, and that the case is before us on demurrer to the bill. A demurrer admits all facts stated in the bill which are well pleaded, but not necessarily all statements of conclusions of law. What was actually done is stated clearly and distinctly. The effect of what was done is a question of law, not of fact. It is a matter of no importance what the purpose of the parties was, if what they did was not sufficient in law to accomplish what they wanted. When there is doubt, the purpose and intention of the parties may sometimes aid in explaining what was done, but here there is no need of explanation. The Missouri Pacific Company has bought the stock of the St. Louis, Iron Mountain & Southern Company, and has effected a satisfactory election of directors, but this is all. It has all the advantages of a control of the road, but that is not in law the control itself. Practically it may control the company, but the company alone controls its road. In a sense, the stockholders of a corporation own its property, but they are not the managers of its business or in the immediate control of its affairs. Ordinarily they elect the governing body of the corporation, and that body controls its property. Such is the case here. The Missouri Pacific Company owns enough of the stock of the St. Louis, Iron Mountain & Southern to control the election of directors, and this it has done. The directors now control the road through their own agents and executive officers, and these agents and officers are in no way under the direction of the Missouri Pacific Company. If they or the directors act contrary to the wishes of the Missouri Pacific Company, that company has no power to prevent it, except by the election, at the proper time and in the proper way, of other directors, or by some judicial proceeding for the protection of its interest as a stockholder. Its rights and its powers are those of a stockholder only. It is not the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property." Pullman Palace Car Co. v. Missouri Pacific R. Co., 115 U. S. 587, 596, 597, 6 Sup. Ct. 194, 198 (29 L. Ed. 499).

See, also, Conley v. Mathisson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113.

[3] Tested by these decisions, we think that these two corporations are separate and distinct railroad companies, not under one management or operation, and that the traffic relations between the same should be governed by the same rules as pertain between other connecting lines. To hold otherwise entirely ignores the rights of the

minority stockholders in said corporation who are certainly entitled under the facts above stated to have their corporation regarded by the public authorities as a separate enterprise, and the management of their railroad as conducted by the corporation owning the same. It is wholly unlike the case of a railroad operated by another corporation under a lease, or other like arrangement. There the lessor corporation does not conduct the business transacted over the leased railroad, but by legislative permission the lessee corporation and its officials as such operate the leased line.

We do not mean to say that there might not be a case in which, without an actual lease or like contract, one railroad might so completely take over the management of another by its officers that it might properly be held that such unification of the lines of the two railroads and of their operations had taken place that they could be regarded as a single line of railway. This is not the case of the roads of the corporations now before the court. As to these we hold that freight rule No. 1 is not within the power conferred by the Constitution and laws of Georgia on the Georgia Public Service Commission, and that the enforcement of the order of February 14, 1923, should be enjoined pendente lite as prayed.