## SMYTH et al. v. ASPHALT BELT R. CO. et al.

(District Court, W. D. Texas, San Antonio Division. September 14, 1923).

No. 267.

1. **Corporations** ⬦188—**Common stock control of two corporations does not affect corporate entity of either.**

That the owners of a majority of the stock of one railroad company also own a majority of the stock of another company does not constitute them a single corporation nor destroy the corporate entity of either.

2. **Railroads** ⬦7—**State statutes held not to make railroad wholly within state subject to federal Transportation Act.**

Statutes of a state requiring all railroads therein to exchange traffic with all connecting lines on terms therein specified, and which, as affecting interstate traffic, are in conflict with the Interstate Commerce Acts of Congress, cannot have the effect of making a railroad company whose projected line is wholly within the state an interstate carrier, and subject to the provisions of the Transportation Act of 1920, as to obtaining a certificate of public convenience and necessity.

In Equity. Suit by J. B. Smyth and others against the Asphalt Belt Railroad Company and another. On motion by defendants to dismiss bill. Granted.

Andrews, Streetman, Logue & Mobley and Robert H. Kelley, all of Houston, Tex., for complainants.

Mason Williams and R. J. Boyle, both of San Antonio, Tex., and G. W. Wharton, of Fort Worth, Tex., for respondents.

WEST, District Judge. *Statement of the Case.*—This is a suit by landowners to enjoin a railroad company from condemning their property as a right of way until it shall have first obtained the certificate of public convenience and necessity required by paragraph 20 of section 1, as added by section 402 of the Transportation Act of February 28, 1920 (41 Stat. 476). Jurisdiction rests solely upon the ground that the suit is one arising under the commerce clause of the Constitution and acts of Congress regulating interstate commerce. Paragraphs 18 and 20 of section 1 of the Transportation Act are as follows:

(18) "After ninety days after this paragraph takes effect no carrier by railroad subject to this act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this act over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this act shall abandon all or any portion of a line of rail-

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

road, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment."

(20) "Any construction * * * contrary to the provisions of * * * paragraph (18) * * * of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the state or states affected, or any party at interest. * * *"

The defendant Asphalt Belt Railroad Company, hereinafter for brevity called the A. B. Company, was regularly incorporated June 9, 1923, under the general incorporation acts of this state (chapter 1, title 115, of the Revised Statutes of Texas), for the purpose of constructing, owning, maintaining, and operating a line of railroad from a point on the line of the San Antonio, Uvalde & Gulf Railway Company, hereinafter for brevity called the S. A., U. & G. Company, near the station of Pulliam, in Zavala county, thence northwesterly into Uvalde county, to a point at or near the mines of the Texas Rock Asphalt Company, about 20 miles from the beginning point; said line to lie wholly within the state of Texas, and the corporation to have all the powers and privileges conferred by the laws of the state of Texas upon chartered railroads, including power to construct and extend. Thereafter the A. B. Company, being unable to agree with the plaintiffs, landowners, as to compensation for the use of its right of way over their properties, instituted condemnation proceedings under the laws of the state of Texas.

Plaintiffs claim that the A. B. Company is a carrier by railroad, who is subject to the provisions of the Transportation Act, it being obliged by law, and its object and purpose being, to carry on its business as interstate carrier; and they further claim to be such parties at interest under the provisions of paragraph 20 of the Transportation Act, supra, as entitle them to enjoin the A. B. Company from proceeding further, unless and until it shall have obtained the certificate of public convenience and necessity provided for in paragraph 18 of the Transportation Act, supra. The plaintiffs further allege that this certificate is necessary upon the ground that the A. B. Company is owned and controlled through stock ownership by the stockholders, directors, officers, and employés of its codefendant, the S. A., U. & G. Company, an interstate carrier, and that consequently the proposed new line is in reality an extension of the S. A., U. & G. Railroad, and the same certificate would be required. The plaintiffs pray for injunction.

Upon the filing of the suit a temporary restraining order was issued. The defendant A. B. Company denied all material allegations, and declared that its sole purpose was to engage in intrastate commerce, and expressly denied that it was in any particular an extension or a part of the S. A., U. & G. Company. It affirmatively declared that it was not controlled by that company, and had and exercised a distinct entity of its own, wholly apart from, and in no manner controlled by, its codefendant interstate carrier; that it is not a carrier subject to the terms of the Transportation Act; that the court is without jurisdiction; and that the suit should be dismissed.

Upon hearing July 30, 1923, the suit was dismissed for lack of jurisdiction, and the restraining order dissolved. Plaintiffs were allowed to amend, and a further hearing and resubmission of the whole matter was had on August 24th; the defendants again standing on their motion to dismiss. Being a rehearing "after amendment" the former judgment of dismissal of July 30th is superseded and set aside.

*The Question of Jurisdiction.*—The A. B. Company, because of its incorporation under the general laws of the state of Texas applying to railroads, has the right to construct, maintain, and operate a railroad wholly within the state of Texas. Obviously it has the right under such laws to condemn private property for public use as an intrastate common carrier, whether it intended to, or afterwards did engage in interstate commerce or not. The right to stay proceedings of this sort should therefore be made to clearly appear beyond any reasonable doubt. Since the plaintiffs' right to injunction rests upon provisions of an act of Congress regulating interstate commerce, the court would be without jurisdiction unless the facts show: (1) That the Asphalt Belt Railroad Company is owned and controlled by the San Antonio, Uvalde & Gulf Railroad Company, an interstate carrier, thus constituting it an extension and branch of the latter road; or (2) that the A. B. Company is obliged by law, and its purpose is, to carry on business as an interstate carrier.

[1] Considering the first ground: The court finds that the majority of the stockholders of the A. B. Company constitute either a majority of the stockholders of the S. A., U. & G. Company, or are persons who hold options on all outstanding bonds of the S. A., U. & G. Company, and on a majority of its stock; that most of the officers and directors of the A. B. Company are officers and directors, or employés, of the S. A., U. & G. Company; that the latter company's properties are now held, and for some years past have been held, and are operated through a receivership under orders of this court. The court concludes as a matter of law that this character of stock ownership and indirect control by stockholders of different railroad corporations does not constitute them "a single corporation," nor destroy the corporate entity of either. Georgia S. & F. Ry. Co. v. Georgia Public Service Com'n (D. C.) 289 Fed. 878; Pullman's Palace Car Co. v. Mo. Pac. R. R., 115 U. S. 587, 596, 597, 6 Sup. Ct. 194, 29 L. Ed. 499; 13 Rose's Notes on U. S. Reports, p. 114, annotations; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113.

The A. B. Company's proposed construction not being an extension or branch of the interstate carrier, the S. A., U. & G. Company, the certificate of public convenience and necessity is not required from the Interstate Commerce Commission by that company. Jurisdiction cannot, therefore, be maintained on the first ground.

[2] The second and remaining basis for jurisdiction is plaintiffs' insistence that the A. B. Company is obliged by law, and its purpose is, to conduct business both as an intrastate and interstate carrier. What obligations are imposed by law on the A. B. Company, and does it intend to carry interstate commerce? Its certified articles of incorporation give no hint of grant of power or purpose to engage in interstate

commerce, but the significant fact of its physical connection with the S. A., U. & G. Company, an interstate carrier, is kept in mind. Plaintiffs rely upon certain articles of the statutes of the state of Texas as showing that the A. B. Company is compelled to receive and transport freight and passengers moving in both intrastate and interstate traffic.

Summarized, article 6588 requires railroads to carry mails of the United States, fixing terms and prices for carriage of United States mail. This is an ancient statute, passed many years before the Interstate Commerce Act was passed. Such an act is necessarily in conflict with the provision of the national laws regulating the transportation of United States mails, and has no application to any issue before the court, and will be passed without comment.

Article 6608 provides as follows:

"*To Receive Freights and Passengers from Connecting Lines.*—All railway companies doing business in this state shall be and they are hereby required to receive from all other railway companies with which they may connect at the state line of this state, or at any place within this state, or at any or all places where they may cross the line of any other railway doing business or operating a line of railway, in this state, all freights and passengers coming to it from such connecting line and destined to points on its line, or to points beyond its line or any other line of railway with which said line may connect or cross, and shall transport the same over its said line to destination if on its line, or to the next connecting or cross line in the direction of destination, if beyond its line, without delay or discrimination in favor of or against the line from which such freight or passengers are received, and upon the same terms and conditions with those made by such line for like or similar service against any other railway in or out of this state with which it does business. * * *"

Article 6609 defines what are connecting lines. Article 6610 provides the terms and conditions as to division of the charges for carrying or transporting freights and passengers upon a mileage or other basis, and upon the same terms and conditions as to bills of lading, tickets, coupon tickets, baggage checks, etc., that other corporations or lines may receive from other persons or corporations engaged in like business. Article 6611 extends the provisions and requirements of the preceding articles to freights and passengers received from water craft common carriers.

It is to be noted that articles 6608 and 6609 were enacted in the year 1887, the same year as the enactment of the Interstate Commerce Act (Comp. St. § 8563 et seq.). Article 6610 was passed in 1883, prior to the passage of the Interstate Commerce Act. Article 6611 was passed in 1899. It seems unnecessary to go into any extended and detailed statement showing in what particulars these acts are now in direct conflict with the provisions of the many Interstate Commerce Acts that are now in effect. All of the articles mentioned specify terms and conditions under which railroads in Texas shall interchange business. The statutes requiring Texas carriers to receive freights and passengers destined to points on its line, or connecting line, indirectly affect the terms and conditions upon which such movement may be handled in interstate commerce, and to that extent the acts would be in conflict with the national Laws. The defendants refer to several articles of

the Interstate Commerce Acts, which would be in conflict with the provisions of the laws prescribed by the state, notably sections 405, 416, 418, and 419 of the Act of February 28, 1920, which amends the Interstate Commerce Act.

Article 6612 of the Texas Statutes provides a penalty for refusing to interchange business with water craft as provided in article 6611, the penalty being not less than $500 nor more than $5,000, and forfeiture to the damaged party of $1,000 as penal damages for each and every act of violation of the law. Article 6615 provides for penalties to be imposed for failing or refusing to receive from connecting lines, as required by section 6608; the penalty being a forfeit of $1,000 as penal damages for each act of violation, in addition to a right of action by way of general damages that may have accrued.

To give effect to those articles would be to declare that railroads in Texas, connecting with another railroad or common carrier by water, are compelled to engage in the transportation of interstate commerce, and consequently subject to the provisions of the Interstate Commerce Acts of Congress, and in this case fix the jurisdiction in this court. Has the state the power to do this? The power granted by the Constitution of the United States to the Congress to regulate interstate commerce is exclusive, and becomes so when Congress exerts its paramount authority. The state's power to regulate ceases when in conflict with the acts of Congress. Section 8, art. 1, Const. U. S.; article 6, Const. U. S.; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Mondou v. N. Y. N. H. & H. R. R., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; H. E. & W. T. Ry. Co., v. U. S., 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341; Wisconsin v. C. B. & Q. R. R., 257 U. S. 563, 42 Sup. Ct. 232, 22 A. L. R. 1086.

From what has been said, it would appear plain that these old statutes of the state of Texas, imposing heavy penalties for violations, are clearly in conflict with those regulations that have been made by Congress and the Interstate Commerce Commission since the passage of the Texas articles, and since the enactment of the Interstate Commerce Acts. Therefore, in giving effect to the articles of incorporation and the laws appertaining thereto, the A. B. Company, by operation of law, is intending to engage only in that character of commerce permitted by the laws under which it is incorporated, which necessarily would be confined to that commerce carried on within the limits of the state.

In Southern Railway Co. v. Reid, 222 U. S. 425, 32 Sup. Ct. 140, 56 L. Ed. 257, a law of North Carolina required railroads to receive freight for transportation whenever tendered, and to forward the same by the railroad selected by the person so tendering the freight, and providing for a penalty, for refusal, of $50 per day. In that case there was a tender and a refusal of the freight to be carried from a point in North Carolina to a point in West Virginia. No through or joint rates having been established, and no rates having been filed with the Interstate Commerce Commission, the shipment was refused. After several days' delay, and after rates had been established, the ship-

ment was finally accepted. Suit was brought for the several days' penalties that had accrued. The Supreme Court of North Carolina held that the statutes simply regulated a duty which preceded the entry of the goods in interstate commerce, and that the statute was neither an interference with nor a burden upon interstate commerce—the same contention as is made by the plaintiffs in this case. The Supreme Court of North Carolina also decided that the execution of the duty imposed by statute was not precluded by the provisions of the Interstate Commerce Act requiring that tariffs be filed and schedules established, but that it was the duty of the railway company to file such schedules, and that the company could not justify a violation of its common-law duty by neglecting a statutory duty.

It is needless to set out at any length the opinion of the United States Supreme Court in the Reid Case. Nearly every line of it has direct application to the principles of law and facts that bear upon the case at bar. It is sufficient to say that in that case the court holds that a statute of a state requiring common carriers to transport freight as soon as received to interstate points under penalty for failure conflicts with the requirements of section 2 of the Hepburn Act of July 29, 1906 (Comp. St. § 8569), prohibiting transportation until rates had been fixed and published, and is therefore unenforceable. Undoubtedly the same conflict would appear under the like conditions which exist in the present case. The court therefore holds, upon authority of Southern Railway v. Reid, supra, that the Texas statutes in question are ineffective and void in so far as they touch interstate commerce.

As to the intention of the A. B. Company to engage in interstate commerce: The company's witnesses testified that its intention was to engage solely in intrastate commerce. Since the duty of interstate carriage was not imposed by law, as contended by the plaintiffs, the duty itself determines the intent, and since the articles of incorporation limit activities of the A. B. Company to intrastate commerce, so will its intention be limited.

The court therefore holds that the second and remaining grounds for jurisdiction that the company was obliged by law, and its purpose was, to conduct business as an interstate carrier cannot be maintained and jurisdiction so asserted fails. Jurisdiction is primarily asserted because of the provisions of the Transportation Act of 1920. If the court's jurisdiction in this case is not settled by the principles declared in the Reid Case, the question is set at rest by a later case. The Supreme Court of the United States in State of Texas v. Eastern Texas Railroad Co., 258 U. S. 204, 42 Sup. Ct. 281, 66 L. Ed. 566, interpreting paragraphs 18 and 20 of the Transportation Act, is authority for the proposition that a railroad, incorporated under the Texas laws, situated wholly within the state, may maintain its status as an intrastate carrier wholly independent of its duty as an interstate carrier. In that case it appears that the Interstate Commerce Commission issued its certificate of public convenience and necessity under paragraphs 18 and 20, authorizing the Eastern Texas Railroad Company to permanently abandon the operation of its railroad, both state and interstate. The company was incorporated under the general laws of Texas, owned

30 miles of railroad wholly within the state, and connected with an interstate carrier. The state sought to enjoin the abandonment because of the unconstitutionality of the Transportation Act, in so far as "abandonment as to intrastate commerce be in disregard of its obligations to the state. The court holds that the act did not authorize Congress to sanction the entire abandonment of railroads such as this. On page 216, of 258 U. S., on page 283 of 42 Sup. Ct. (66 L. Ed. 566), the court says:

"The road lies entirely within a single state, it is owned and operated by a corporation of that state, and is not a part of another line. Its continued operation solely in intrastate commerce cannot be of more than local concern."

The remarks of the court so aptly cover the law and facts in this case that it seems pertinent to draw attention thereto. Quoting the syllabus the court holds that:

"Paragraphs 18–20, § 1, of the Act to Regulate Commerce, added by section 402 of the Transportation Act of 1920, which regulate the construction and acquisition of new lines of railroad and the extension and abandonment of old lines, are not to be construed as clothing the Interstate Commerce Commission with authority over the discontinuance of the purely intrastate business of a railroad whose situation and ownership are such that interstate and foreign commerce will not be affected by that business."

This case, therefore, is ample and conclusive authority for the proposition that under the facts of the case at bar, and under the law applicable thereto, the A. B. Company is not a carrier subject to the provisions of the Interstate Commerce Act in question; consequently the court has no jurisdiction to entertain the relief by way of injunction which is sought by the plaintiffs.

Defendants' motion to dismiss plaintiffs' second amended bill, filed August 24, 1923, should be, and the same is hereby, sustained, and the suit dismissed; the court intending that this order shall operate as a final decree, and to that extent supersede the judgment of dismissal entered herein on July 30, 1923. An order to this effect will be entered in due course.