## MAJESTIC CO. v. ORPHEUM CIRCUIT, Inc.

Circuit Court of Appeals, Eighth Circuit.
September 13, 1927.

No. 7699.

1. Corporations ⬅174—Relation of corporation and stockholder is not that of principal and agent.

A corporation may act as agent of its stockholders or vice versa, but the relation of corporation and stockholder is not that of principal and agent.

2. Corporations ⬅1—Corporation has an entity separate and distinct from its stockholders.

A corporation has an entity separate and distinct from its stockholders and act of corporation is not that of its stockholders, nor is its obligation that of stockholders.

3. Corporations ⬅378—Corporation is not liable for acts or obligations of another corporation because controlling ownership of stock.

A corporation is not liable for acts or obligations of another corporation merely because it controls such other corporation by reason of ownership of its stock.

4. Corporations ⬅1—Courts will ignore fiction of corporate entity and regard corporation as association of persons only when used as blind.

Generally a corporation will be regarded as a legal entity, and the courts will ignore the fiction of corporate entity and regard corporation as an association only when circumstances justify it, where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud.

5. Corporations ⬅378—Corporation owning stock of another corporation operating theater held not liable for rent of building after sale of stock.

Where corporation, organized for purpose of operating a theater, was a legal entity separate and distinct from another corporation owning stock thereof, its contract obligations were not obligations of corporation owning the stock so as to create liability for rent under lease of theater building after sale of stock, in absence of other circumstances which must be substantiated by clear and positive proof.

6. Corporations ⬅378—Corporation's scheme of acquiring and holding stock interest in various theater companies held not of itself unlawful.

Scheme of corporation of acquiring and holding a controlling stock interest in various theater companies in order to co-ordinate their action, facilitate business, and economize in expenses, *held* not in itself unlawful.

7. Corporations ⬅378—Corporation owning stock of another corporation must have managed other corporation as mere instrumentality, with proximate damage therefrom to create liability for contractual obligations after sale of stock.

In order to hold corporation liable for contract obligations of another corporation in which it held controlling stock interest, it is necessary to establish by clear and convincing evidence that at the time it was controlling stockholder, and before sale of stock, it caused the affairs of such other corporation to be so controlled and managed that it became a mere instrumentality or agency, and that damage resulting was the proximate result of mishandling of its affairs.

8. Damages ⬅18—No recovery can be had unless damages are proximate result of some wrong or breach of duty.

Unless damages are a proximate result of some wrong or some breach of duty, no recovery can be had therefor.

**9. Corporations ⬤378—Corporation is not liable for contract obligation of another corporation, in which it had held controlling stock, for wrongful abstraction of funds by requiring payment of proportionate part of central service department.**

Where corporation, created for purpose of establishing circuit of theaters, subsequently acquired stock in corporation operating theater, and required such corporation to pay its proportionate part of maintenance of central service department operated for purpose of increasing the efficiency of the various theaters and obtaining such service at lower cost than could have been done independently, claimant against theater corporation under a contractual obligation after sale of stock by purchasing corporation cannot hold purchasing corporation liable on ground that it had wrongfully abstracted funds by such method; there being no showing that amount paid for service was disproportionate to value thereof.

**10. Corporations ⬤378—Corporation owning controlling stock interest of another corporation held not liable for contractual obligations after sale thereof because of lawfully declaring dividends.**

Where corporation, created for purpose of establishing circuit of theaters, purchased controlling stock interest in theater company and thereafter disposed of all interest therein, it cannot be *held* liable for contract obligation of such corporation because of fact that, while under its control and management dividends were lawfully declared and paid.

**11. Corporations ⬤152—Corporation before declaring dividend need not set aside against future sufficient money or assets to pay future running expenses.**

It is not necessary, in order that a corporation may pay dividends, that it should set aside against the future sufficient money or assets over and above its capital to pay all its future running expenses.

**12. Corporations ⬤152—Liability of corporation on capital stock is not to be considered in determining right to pay dividends (Code Iowa 1924, § 8378).**

Under Code Iowa 1924, § 8378, the liability of a corporation on its capital stock is not an indebtedness to be considered in determining whether or not the corporation may lawfully pay dividends.

**13. Evidence ⬤73—Payment of dividends is presumed lawful without showing to contrary.**

In absence of a showing to contrary, presumption is that payment of dividends is lawful.

**14. Landlord and tenant ⬤134(1)—Lessor of theater building had no right to insist that lessee continue use of name or exhibit certain type of entertainment.**

Lessor of theater building, under lease requiring only that leased premises be used as a theater, had no legal right to insist on continuance of use of name nor that lessee continue to exhibit certain type of entertainment.

21 F.(2d)—46

**15. Landlord and tenant ⬤252(1)—Seller's contract retaining title to equipment of building subject to landlord's lien held not to effect conversion thereof.**

Where, at time of sale of stock in a theater company, seller contracted to retain title to equipment therein which was subject to a landlord's lien, such contract *held* not to effect a conversion of equipment where lessor in fact took possession of such equipment under the lien and retained it.

**16. Corporations ⬤378—Payment to corporation of certain sum for stock in another corporation did not constitute taking assets creating liability for contract obligations of other corporation.**

Where corporation, at time of sale of stock interest in another corporation, received payment of certain sum of money, there was no taking of assets sufficient to justify holding it liable under contract obligation of such other corporation.

**17. Corporations ⬤519(3)—Evidence held not to establish that corporation holding controlling stock interest in another corporation had practiced any wrong or injustice.**

In action to recover against corporation under lease agreement with another corporation in which it had held controlling stock interest, evidence *held* insufficient to establish any wrong or injustice or that it had used the corporate entity of such corporation as a shield or otherwise to practice any injustice on claimant.

**18. Corporations ⬤378—That officers and directors of stockholder corporation and of subsidiary are the same does not of itself destroy separate corporate entity.**

The fact that officers and directors of stockholder corporation and directors of subsidiary are same people does not of itself destroy separate corporate entity.

**19. Appeal and error ⬤1010(1)—Findings will not be disturbed unless contrary to or unsupported by evidence or based on mistake or erroneous conclusion of law.**

Findings of lower court have the force and effect of a verdict, and should not be disturbed unless contrary to or unsupported by evidence, or unless based on mistake or erroneous conclusion as to controlling point of law.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action by the Majestic Company against the Orpheum Circuit, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

Oscar Strauss, of Des Moines, Iowa (O. M. Brockett, of Des Moines, Iowa, on the brief), for plaintiff in error.

R. L. Read, of Des Moines, Iowa (B. B Kahane, of Chicago, Ill., and Sargent, Gamble & Read, of Des Moines, Iowa, on the brief), for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

MOLYNEAUX, District Judge. This action was brought by the Majestic Company, plaintiff in error, against Orpheum Circuit, Inc., defendant in error, to recover upon the covenants of a lease executed between the plaintiff, an Iowa corporation, and the Des Moines Amusement Company, a corporation organized under the laws of Illinois, the theory of the plaintiff being that the Des Moines Amusement Company was a mere agent or instrumentality of the defendant company.

In March, 1907, Emma Lederer et al., the owners of certain real estate in the city of Des Moines, entered into a written contract with Charles E. Kohl et al., which provided for the building and construction of a theater on the premises owned by the proposed lessor, the organization of a corporation by the said Kohl et al., and the execution of a lease to the corporation to be formed. The corporation, Des Moines Amusement Company, was organized by Kohl et al., under the laws of the state of Illinois, obtained a permit to transact business within the state of Iowa, and the lease was duly entered into by the Majestic Company as lessor, and Des Moines Amusement Company, as lessee.

Emma Lederer et al. had caused to be organized the Majestic Company, an Iowa corporation, and had conveyed or leased to it, the real estate before referred to, and had assigned to it the agreement before mentioned. The term of the lease was 15 years 5½ months, commencing November 16, 1907, and ending May 18, 1923. The rent reserved was $900 per month, payable on the 1st of each month commencing with December 1, 1907.

The lease covenanted to "use said premises as a theater and for no other purpose." The lessor reserved the landlord's lien upon the unexpired term of the lease and all personal property of the lessee on the leased premises during the term of the lease.

The Des Moines Amusement Company, the lessee, was capitalized at $25,000. Its entire capital stock was paid for in cash, and its entire authorized stock, to wit, 250 shares was issued to Kohl et al., the incorporators, in proportion to their respective ownership.

The lease provided for a deposit by the lessee of the sum of $20,000 with the lessor, upon the execution of the lease, to be held by lessor as security for all of the covenants and agreements of the lessee in the lease contained. Three per. cent. annual interest was to be allowed by the lessor on the sum on deposit. Any part of the sum remaining otherwise unused at the time of the fourteenth and fifteenth years of the lease was to be applied by the lessor upon the rent due for those years (the last two of the lease).

On December 27, 1920, a written agreement was entered into by and between the Majestic Company and the Des Moines Amusement Company extending the lease to the 30th day of April, 1928, and providing for a monthly rental to be paid during the extension period, in the sum of $1,083.33⅓, payable monthly in advance.

It was expressly agreed by the terms of the lease that no deposit of advance rent should be required by the Des Moines Amusement Company under the extension of the agreement.

The Des Moines Amusement Company entered into possession under the original lease and continued in possession until approximately July, 1923, when it surrendered possession of the re-leased premises to the lessor and abandoned the lease.

All of the rental due under the lease up until the 1st of June, 1923, has been paid to the lessor in full. All of the advance deposits of rent, to wit, the sum of $20,000, deposited with the lessor under the terms of the original lease, was, in conformity with the lease agreement, applied by the lessor to payment of the rental installment for the last two years of the original term.

It further appears that during the year 1919, certain parties including Richardson, Hill & Co., bankers, of the city of Boston, and the Central Trust Company of Illinois, formulated a plan of organizing a corporation to be known as Orpheum Circuit, Inc., which was duly incorporated under the laws of the state of Delaware on or about the 20th day of December, 1919, with an authorized capital stock of 100,000 shares of preferred stock, of the par value of $100 per share, aggregating $10,000,000, and 1,000,000 shares of common stock without nominal or par value.

On January 1, 1920, Orpheum Circuit, Inc., acquired and became the owner of the capital stock (250 shares) of the Des Moines Amusement Company; the stock so acquired by it being issued by the Des Moines Amusement Company, 247 shares to Orpheum Circuit, Inc., one share to J. M. Beck, one share to Marcus Heiman, and one share to M. H. Singer.

On or about January 1, 1920, Orpheum Circuit, Inc., also acquired and became the owner of all or a substantial amount of the

capital stock of approximately thirty-two other corporations which owned and were operating theaters in various parts of the United States and Canada.

After the acquisition of the capital stock of the Des Moines Amusement Company by Orpheum Circuit, Inc., as above stated, a stockholders' meeting was held at which Martin Beck, M. H. Singer, and Marcus Heiman were elected as the board of directors of the Des Moines Amusement Company, and they were by re-election continued as the board until on or about July 18, 1922, at which time they resigned, pursuant to the sale of all of the capital stock of Des Moines Amusement Company to B. F. Elbert and J. A. Getchell, and during the same period of time, either Beck or Heiman was elected as president and Singer as treasurer of the Des Moines Amusement Company.

During the time that said individuals, to wit, Beck, Heiman, and Singer, were directors and officers of Des Moines Amusement Company, they were also directors of Orpheum Circuit, Inc., and part of the time Beck was president of Orpheum Circuit, Inc., and part of the time Heiman was president, and Singer one of the vice presidents, of Orpheum Circuit, Inc.

In July, 1922, Bonnie L. Elbert, wife of B. F. Elbert, and Ellen Getchell, wife of J. A. Getchell, were the owners and holders by assignments from their husbands, of a lease covering a theater building in the city of Des Moines, known as Sherman Theater. They entered into a written agreement with B. B. Kahane, subleasing their rights as lessee to the said Kahane, in and to the Sherman Theater. By said agreement the said Kahane had the right to assign his sublease to a corporation, and in August, 1922, he did assign his sublease to the Valley Amusement Company, a corporation, of which Orpheum Circuit, Inc., owned all of the capital stock, with the exception of directors' qualifying shares; and said corporation thereupon changed its name to Des Moines Orpheum Company, and qualified as provided by law under the state of Iowa, and obtained a permit to transact business in Iowa.

On or about July 19, 1922, pursuant to a written contract by and between Orpheum Circuit, Inc., and B. F. Elbert and J. A. Getchell, Orpheum Circuit, Inc., and Beck, Heiman, and Singer, sold and transferred to the said Elbert and Getchell all of the stock of Des Moines Amusement Company, to wit, 250 shares issued and outstanding; the consideration being stated in the contract agreement.

The stock of the Des Moines Amusement Company was reissued as follows: To B. F. Elbert, 186 shares; J. A. Getchell, 63 shares; E. H. Hays, 1 share. And at the next ensuing stockholders' meeting Elbert and Getchell and Hays were elected as directors of Des Moines Amusement Company, and at the next ensuing directors' meeting Elbert was elected president and Getchell secretary and treasurer of the corporation.

At the time of the sale of the capital stock of Des Moines Amusement Company to Elbert and Getchell, the rent due the Majestic Company under the original lease between it and the Des Moines Amusement Company had been paid, and the lease was not in default under the lease, and at the time there remained unused of the original $20,000 deposit made by the Des Moines Amusement Company to the Majestic Company, as provided in the lease, a balance of $9,000; and, pursuant to the agreement of lease, the Majestic Company continued to apply said fund on deposit to the installments of rental due under the lease as they accrued, from time to time.

After the sale of the stock to Elbert and Getchell, the Des Moines Amusement Company changed the name of the theater to "Iowa Theater," and continued to operate the theater as a place of public entertainment until about July, 1923.

The advance deposit of rent in the hands of the Majestic Company was sufficient to pay the rent accruing monthly to the installment due May 1, 1923. The Des Moines Amusement company paid the rent under the extension agreement for the month of May, 1923, but failed to pay in June, and, as testified by Mr. Strauss, president of the Majestic Company, "early in July, 1923, Mr. Getchell and Mr. Elbert indicated to me that they did not think they would be able to continue the operation of the theater, * * * and along toward the end of July, 1923, they said they would not continue, and then attempted to abandon the premises and surrender possession."

The Des Moines Amusement Company did, in fact, surrender possession; and thereupon, on July 26, 1923, the Majestic Company, by Arthur Strauss, president, sent to Des Moines Amusement Company, to Orpheum Circuit, Inc., and to Elbert and Getchell, a letter, which reads as follows:

"Gentlemen: This is to notify you and each of you that anything done, or permitted to be done, by the Majestic Company, or by any one acting in its behalf up to this time, or hereafter, in the protection of its interests and the reduction of its damages suffered, and to be suffered, by reason of the breach of the lease entered into between the Majestic Company and the Des Moines

Amusement Company, nor the Orpheum Theater, now known as the Iowa Theater, West 8th St., Des Moines, Iowa, originally dated November 16, 1907, and renewed and extended by agreement of the 27th day of December, 1920, is subject to its rights against you, or either of you, growing out of the breach aforesaid and your abandonment of the said premises; and you are further notified that the said Majestic Company does not accept the abandonment of the said premises, and that any reletting of the said premises, or negotiations for reletting, shall be only on your account as tenants and parties liable under the said lease, and any money paid thereon shall be and is accepted by the Majestic Company only in an endeavor to reduce the damage that it suffers and will suffer by reason of your acts. And this is further notice to you that the said Majestic Company will and intends to assert each and every right that it may have by the said lease and extension thereof, by statute or otherwise against you, or either of you, growing out of the breach of the aforesaid lease and its extensions noted above."

Following the transmittal of this letter, the Majestic Company took over the leased premises, together with all equipment and property of the lessee in the building, and since that time has at all times been in possession, control, and operation thereof.

The Majestic Company has, since it took over the leased premises, exercised full control thereof, and has operated the theater, both by itself and under lease to others. The amount it seeks to recover in this case of Orpheum Circuit, Inc., is the amount of the rentals and other money payments to be made on account of taxes, etc., under the extension of the original lease, after deducting therefrom the amount of the moneys actually received by the Majestic Company out of the leased premises since it took over possession thereof, following the abandonment by the Des Moines Amusement Company, as heretofore stated.

[1] 1. As we read the brief of plaintiff in error, we are in doubt whether or not counsel claims Orpheum Circuit, Inc., is liable upon the lease on grounds of agency; and the circumstances in this case would not warrant such claim. A corporation may, of course, act as the agent of its stockholders or vice versa, but the relation of corporation and stockholder is not that of principal and agent.

Plaintiff in error states its position concretely and particularly in the statement:

"These, with all the facts and inferences therefrom to be deduced, the act of the defendant depriving this Amusement Company of all of its assets, its good will, its business, its capital, leaving only its charter, lease, and a minute book with which to pay an obligation to this plaintiff of $100,000 shows conclusively: First, a complete unity of interest and ownership between the defendant and the Des Moines Amusement Company; second, that adherence to the fiction of separate corporate existence between the defendant and the Des Moines Amusement Company sanctions a fraud and promotes injustice."

[2] In legal conception a corporation has an entity separate and distinct from its stockholders; and the act of the corporation is not that of the stockholders. Nor is its obligation that of its stockholder. Hall's Safe Co. et al. v. Herring-Hall-Marvin Safe Co. (C. C. A.) 146 F. 37, 14 L. R. A. (N. S.) 1182, modified 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Richmond, etc., Co. v. Richmond, etc., R. R. (C. C. A.) 68 F. 105, 34 L. R. A. 625.

[3] A corporation is not liable for the acts or the obligations of another corporation, merely because it controls such other by reason of ownership of its stock. New York Trust Co. v. Carpenter (C. C. A.) 250 F. 668; Minifie v. Rowley, 187 Cal. 481, 202 P. 673; City of Winfield v. Wichita Natural Gas Co. (C. C. A.) 267 F. 47; Watson v. Bonfils (C. C. A.) 116 F. 157; Syndicate Co. v. Bohn (C. C. A.) 65 F. 165, 169, 27 L. R. A. 614; 12 Columbia Law Review, 496, 517; Richmond, etc., Co. v. Richmond, etc., R. R. (C. C. A.) 68 F. 105, 34 L. R. A. 625.

The corporate entity will not be ignored at law nor in equity, whether the control is in the hands of one or many stockholders. City of Winfield v. Wichita Natural Gas Co. (C. C. A.) 267 F. 47; 12 Columbia Law Review, 496, 517; Richmond, etc., Co. v. Richmond, etc., R. R., supra; Watson v. Bonfils, supra; Aiello v. Crampton (C. C. A.) 201 F. 891; East St. Louis, etc., Ry. Co. v. Jarvis (C. C. A.) 92 F. 735.

[4] The corporation will be regarded as a legal entity as a general rule, and the courts acting cautiously and only when the circumstances justify it, will ignore the fiction of corporate entity, where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud, and will regard the corporation as an association of persons. Peckett v. Wood (1916 C. C. A. 3d Cir.) 234 F. 833; New York Trust Co. v. Carpenter (1918 C. C. A. 6th Cir.) 250 F. 668; The Gloucester (D. C. Mass. 1923) 285 F. 579; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273, 28 S. Ct.

288, 52 L. Ed. 481, 487; City of Winfield v. Wichita Natural Gas Co. (C. C. A.) 267 F. 47; Richmond, etc., Co. v. Richmond, etc., R. R. (C. C. A. 6) 68 F. 105, 34 L. R. A. 625; Watson v. Bonfils (C. C. A. 8) 116 F. 157; East St. Louis, etc., Ry. v. Jarvis (C. C. A. 7) 92 F. 735; Aiello v. Crampton (C. C. A. 8) 201 F. 891; Hall's Safe Co. et al. v. Herring-Hall-Marvin Safe Co. (C. C. A. 6, 1906) 146 F. 37, 14 L. R. A. (N. S.) 1182, modified 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Erkenbrecher v. Grant, 187 Cal. 7, 200 P. 641; Peterson v. Chicago, R. I. & P. R. Co. (1907) 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; Pullman's Palace Car Co. v. Mo. P. R. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499; Peckett v. Wood (1916 C. C. A. 3) 234 F. 833; In re Watertown Paper Co. (1909 C. C. A. 2) 169 F. 252; Smyth v. Asphalt Belt R. Co. (1923 D. C. Tex.) 292 F. 876; Georgia S. & F. Ry. Co. v. Georgia Public Ser. Comm. (1923 D. C. Ga.) 289 F. 878; City of Holland v. Holland City Gas Co. (1919 C. C. A. 6) 257 F. 679; Haskell v. McClintic-Marshall Co. (1923 C. C. A. 9) 289 F. 405; Stone v. Cleveland, C., C. St. L. Ry. Co., 202 N. Y. 352, 95 N. E. 816, 35 L. R. A. (N. S.) 770; Ulmer v. Lime Rock R. Co. (1904) 98 Me. 579, 57 A. 1001, 66 L. R. A. 387; Bergenthal v. State Garage & Trucking Co., 179 Wis. 42 (1922) 190 N. W. 901; Pittsburgh & Buffalo Co. v. Duncan (C. C. A.) 232 F. 584; Martin v. Development Co. of America (1917) (C. C. A. 9) 240 F. 42; United States v. Milwaukee Ref. Transit Co. (C. C.) 142 F. 247; Edward Finch Co. v. Robie, 12 F.(2d) 360 (C. C. A. 8 Cir.); 31 Harvard Law Review, 894; 27 Harvard Law Review, 386; 17 Columbia Law Review, 128, 132 to 133; 2 Mass. Law Quarterly, 308, 309 to 310; 28 Harvard Law Review, 811; 32 Harvard Law Review, 424, 428; 20 Harvard Law Review, 223 to 224; 96 Central Law Journal, 201; 12 Columbia Law Review, 496, at 517.

2. The lease in question on the covenants of which the plaintiff in error seeks to hold the defendant liable, is the contract obligation of the Amusement Company. It was entered into by the plaintiff in error and the Des Moines Amusement Company, a number of years before the Orpheum Circuit, Inc., acquired the stock of the Amusement Company. The two contracting parties to the lease continued to observe and carry out the terms of the lease for several years after the Orpheum Circuit, Inc., had sold its stock in the Amusement Company to Elbert and Getchell. The Orpheum Circuit, Inc., and the Des Moines Amusement Company were never merged into one company. The only interest the former had in the latter was that of stockholder. The two corporations always remained separate. The Orpheum Circuit owned stock in the Amusement Company as it did in thirty-two other theater companies, forming what is known as the Orpheum Circuit of Theaters. The business of each of the thirty-three subsidiary corporations forming the circuit was kept separate from each other and from the business of the Orpheum Circuit, Inc.

All of the stock in some of the thirty-three corporations was owned by, and in others only partially owned by, the Orpheum Circuit, Inc. Separate books of accounts were kept by each of the organizations, and each made its own contracts. Each stood on its "own bottom" and was so treated and accepted by their respective creditors. They were all dominated by the Orpheum Circuit, which received dividends on its stock in such companies and had no other financial interest in them. The same was true as to the Des Moines Amusement Company.

[5] It is apparent that the Des Moines Amusement Company is a legal entity separate and distinct from its stockholder, the Orpheum Circuit, Inc., and that its contract obligations are not obligations of the latter. The lease in question was made between the appellant and the Amusement Company long before the Orpheum Circuit was interested in the Amusement Company as a stockholder. It is apparent that the Orpheum Circuit, Inc. is not obligated upon the lease and is not liable for the rent stipulated by the lease, unless it has become so for some conduct upon its part, occurring while it was a stockholder of the Amusement Company, or, as claimed by the plaintiff, by "the act of the defendant in depriving the Amusement Company of its assets, its good will, its business, its capital, leaving only its charter, lease, and a minute book with which to pay an obligation to this plaintiff of $100,000."

In order to recover here, the plaintiff must substantiate such indictment by clear and positive proof.

[6] The scheme of the Orpheum Circuit, Inc., and its organizers in forming the corporation for the purpose, among others, of acquiring and holding a controlling stock interest in the various theater companies, was to control a circuit of theaters and co-ordinate their action, to facilitate business, and to economize in expenses. Such scheme is not in itself unlawful. The Orpheum Circuit, Inc., is merely a stockholding corporation.

The case of Chicago, Milwaukee & St. Paul Ry. Co. v. Minneapolis C. & C. Association, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229

(same case reported in 134 Minn. 169, 158 N. W. 817, from which court the case was appealed to the Supreme Court of United States), is not opposed to the general trend of authorities cited herein:

"1. Both the Railroad and Warehouse Commission and the trial court found as a fact that the Minneapolis Eastern Railway is one of the terminal facilities of the 'Milwaukee' and 'Omaha' Railway systems at Minneapolis. Held, that the fact that these companies furnished all the funds for constructing the 'Eastern' and own all its capital stock and bonds, taken in connection with the restrictions imposed upon it by the contract under which it was constructed and the rights and powers secured to these companies by such contract and with the facts disclosed as to the manner in which it is managed, controlled and operated, is sufficient to sustain such finding."

"2. Imposing charges for switching shipments of grain to industries located upon the tracks of the 'Eastern,' no charge being made for switching like shipments to industries located upon other industrial tracks of the 'Milwaukee' and 'Omaha,' is an unjust discrimination against the industries served by the tracks of the 'Eastern.' " Minneapolis Civic & Commerce Ass'n v. Chicago, Milwaukee & St. Paul Ry. Co. et al., 134 Minn. 169, 158 N. W. 817.

This is a case where under the facts the court found the corporate entity of the controlling corporation was being used as a shield behind which a wrong was being perpetrated and that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

[7] It is therefore incumbent upon the plaintiff in this case to establish by clear and convincing evidence that during the time that Orpheum Circuit, Inc., was the controlling stockholder of Des Moines Amusement Company, it caused the affairs of the Amusement Company to be so controlled and managed that it may be said that Des Moines Amusement Company became and was a mere instrumentality or adjunct or agency of Orpheum Circuit, Inc., and that the damage to plaintiff which subsequently occurred by reason of the subsequent defaults of Des Moines Amusement Company under the lease, was a proximate result of the mishandling of the Des Moines Amusement Company, and that to now recognize the separate existence of Des Moines Amusement Company would aid the consummation of a wrong, or sanction a fraud or injustice.

[8] It is fundamental that, unless plaintiff's damages are a proximate result of some wrong of the defendant or some breach of duty the defendant owed the plaintiff, then in no event can the defendant be held liable.

The trial court found expressly against the plaintiff on this point, saying:

"A party cannot complain and cannot recover except in so far as the record shows that he has been damaged as a direct result of wrongful acts * * * there is no proof of damages to the plaintiff as the direct result of plaintiff's conduct."

We think the record sustains the lower court in this finding.

No complaint is made by plaintiff concerning the conduct of Des Moines Amusement Company prior to the time when, in February, 1920, Orpheum Circuit, Inc., acquired its stock. No complaint is made by plaintiff concerning the method of management and control of Des Moines Amusement Company after Orpheum Circuit, Inc., sold the stock to Elbert and Getchell in July, 1922, except that plaintiff claims that Des Moines Amusement Company has defaulted under the lease.

Plaintiff concedes the existence of the corporate entity at all times after the time Elbert and Getchell became the stockholders. The default under the lease occurred long after Orpheum Circuit, Inc., had sold its stock and severed its connection with the Amusement Company.

The things complained of and the only things plaintiff can complain of, if at all, are those which happened during the time that the Orpheum Circuit, Inc., was the controlling stockholder of the Amusement Company.

Assuming, but not holding, that, in its dealings with Des Moines Amusement Company, Orpheum Circuit, Inc., treated it as a mere agency, we will consider what wrong, if any, the Orpheum Circuit, Inc., has done to the plaintiff; what breach of duty towards plaintiff it has been guilty of; what fraud or injustice has been perpetrated, or is now sought to be perpetrated.

Plaintiff claims that defendant wrongfully abstracted the funds of the Amusement Company, by two methods, viz.: By causing the Amusement Company to pay its proportionate part of the maintenance of the central service department; and by payments of dividends. We will consider these claims in their order.

[9] The facts concerning the so-called "central service departments," as developed by the evidence, are as follows:

Orpheum Circuit, Inc., caused to be organized a corporation known as Orpheum

Theater & Realty Company, which organized and operated central service departments such as a legal department, a publicity department, a contracting department, a decorating department, etc. All of the subsidiary operating corporations, such as Des Moines Amusement Company, were, with few exceptions, engaged in similar businesses. Thus each of them was enabled, by the use of the central service departments, to get the most efficient service at the lowest cost.

A subsidiary operating corporation that did not use the central service departments was not required to contribute to the cost of the maintenance thereof; but, if the departments, or any of them, were used by the subsidiaries, then it was required to contribute its proportionate share to the cost of maintaining the department. It was not required, and it was not the practice for the various subsidiary companies, to enter into a formal contract engaging the service of the central service departments. A subsidiary, desiring to use the central service departments, did so informally. That seemed to be the general understanding and custom among the various corporations. Undoubtedly when the managing officers of one of the subsidiaries desired to have the corporation managed by him use the central service departments, he directed the corporation to that effect. Such informality was natural under the circumstances, and of course indicates the freedom of the various companies to use or not to use the central service departments, as such subsidiary might desire.

Orpheum Circuit, Inc., derived no money whatever from any of its subsidiaries by reason of their contributions to the central service company. There is no showing of the amount Des Moines Amusement Company paid to Orpheum Theater & Realty Company as its proportionate share of the upkeep of the several central service departments; nor is there any showing that the amount paid by it was disproportionate to the value of the service rendered to it. On the contrary, there is testimony to the effect that the services rendered to the subsidiaries by the various central service departments were efficient, beneficial, and obtained at a lower cost than the subsidiaries could have obtained it acting independently.

There is no evidence one way or the other by which the court can determine whether or not the Des Moines Amusement Company would have been allowed to use the central service departments after the Orpheum Circuit, Inc., sold its stock in the Amusement Company, but plaintiff can have no lawful complaint on that account. The central service departments of the Orpheum Theater & Realty Company (which was caused to be organized by Orpheum Circuit, Inc.) were designed to be available to the subsidiary companies of the Orpheum Circuit, Inc., but probably not to strangers to the class of business in which they were engaged. Des Moines Amusement Company, engaging in the production of the so-called "legitimate" attractions, which were exhibited by it during the time of the Elbert and Getchell ownership, had no use for the class of service rendered by the central service department of the Orpheum Theater & Realty Company.

But, aside from all this, there was no duty resting upon the Orpheum Theater & Realty Company, after the Orpheum Circuit, Inc., had sold its stock to Elbert and Getchell, to furnish such service to the Amusement Company. It was a matter of contract dependent upon the will of the parties to contract. If either corporation chose not to enter into a contract upon the subject, it was not under compulsion to do so. The plaintiff has no just complaint of being wronged in this respect.

[10] Another complaint made by plaintiff is that dividends were paid out of the capital stock of the Amusement Company during the time Orpheum Circuit, Inc., was its chief stockholder. Dividends were declared as follows: On February 28, 1920, $40 a share; on June 6, 1920, $20 a share; on November 1, 1920, $20 a share; on March 2, 1921, $35 a share.

During 1920 until after March 2, 1921, Des Moines Amusement Company had assets consisting of $20,000 in cash on deposit with the plaintiff company, and physical assets consisting of theatrical equipment in the leased theater building which were valued in February, 1920, at approximately $20,000, a total of $40,000.

The original lease deposit was evidently made out of moneys derived from the sale and issue of capital stock, in 1907, when the Des Moines Amusement Company was incorporated. The deposit was made with the plaintiff by Des Moines Amusement Company at the time of the making of the lease as security for the payment of the rent, long before the Orpheum Circuit, Inc., acquired its holding of stock in the Amusement Company, and of course must have been made out of its capital assets.

Plaintiff complains that the payment of dividends before mentioned was an impairment of the capital of the Des Moines Amusement Company. Plaintiff argues that, before dividends could be lawfully paid, Des Moines Amusement Company was required to

replace in its capital assets the sum of $20,-000 deposited under the original lease. It is obvious that, though the $20,000 deposited with plaintiff under the lease was out of the capital, yet that sum had not been consumed in producing earnings. None of that sum had been applied towards the liquidation of accruing rental installments under the lease, until long after the last dividend had been declared and paid to Orpheum Circuit, Inc.

It is obvious that it is beyond controversy that, during the time that the Orpheum Circuit, Inc., received dividends on its stock in the Orpheum Company, the admitted capital assets of the Amusement Company were not less than $40,000, the aggregate value of the deposit and the physical assets.

Plaintiff contends that the payment of the dividends was wrongful because, during the period of time they were made, or part of the time, the Amusement Company was under liability for future installments of rent, future accruing taxes, etc.; the total of such future accruing liability being calculated by plaintiff at $100,000.

It is to be observed that this future liability was not for something the Amusement Company had already received and had the benefit of, but was for something it was yet to receive and have the benefit of, and that is true both as regards the rent and the taxes. It was to have the use of the building and premises and pay for them as it used them, and got the benefit of them, and the same principle applies to the taxes which it was to pay as part of the rental.

[11] Plaintiff's real proposition is that the Amusement Company could not lawfully pay dividends until it had earned and set aside against the future sufficient money or assets over and above its capital to pay all of its future running expenses. Such proposition is clearly untenable.

[12] The statutes of the state of Iowa make provision for the remedy of a creditor who is damaged by the wrongful diversion of the funds of a corporation. Iowa Code 1924, § 8378.

The Supreme Court of Iowa has construed the statute in respect to what is included in the word "liability" as used in the statute, and has held (Miller v. Bradish, 69 Iowa, 278, 28 N. W. 594, and Redhead v. Bank, 127 Iowa, 572, 103 N. W. 796), that the liability of a corporation on its capital stock is not an indebtedness to be considered in determining whether or not a corporation may lawfully pay dividends.

[13] In the absence of a showing to the contrary, the presumption is that the payment of dividends is lawful. Redhead v. Bank,

supra; Stoddard v. Shetucket F. Co., 34 Conn. 542; Balch v. Hallet, 10 Gray (Mass.) 402; Walker v. Walker, 68 N. H. 407, 39 A. 432.

It is not denied that dividends were formally declared and paid to the stockholder of the Amusement Company. The Amusement Company was operating throughout the entire period that dividends were paid, and was a going concern and continued to be a going concern and operated for a year after the defendant parted with its stock. The cash with which to pay the dividends was not derived from the sale of the physical assets, consisting of theatrical equipment, etc., owned by the Des Moines Amusement Company, nor was the money on deposit with the plaintiff company used for that purpose.

At the time the dividends were paid, the Amusement Company had fulfilled all of its obligations to the plaintiff, and had discharged in full all its current obligations to the plaintiff, and continued to fulfill them and to discharge all of its obligations to the plaintiff company until June, 1923, almost two years and two months after the last dividend was paid by the Amusement Company, and a year after the Orpheum Circuit, Inc., had disposed of its stock in the Amusement Company to Elbert and Getchell.

The connection of the Amusement Company with the Orpheum Circuit, Inc., was of benefit to the plaintiff. During that period it fulfilled all of its obligations to the plaintiff and paid the plaintiff the rent promptly. The law would not require that the Amusement Company accumulate enough earnings to pay all of its future accruing expenses or its obligations for future rents, taxes, etc., before it could pay dividends. Dividends were lawfully declared and paid, and the plaintiff has neither a legal nor a moral right to complain in this respect.

Plaintiff advances the claim that the defendant divested the Amusement Company of every item of its assets, including its business, good will, and assets; that this was accomplished as a result of the contract between defendant and Elbert and Getchell, entered into at the time Elbert and Getchell purchased the capital stock of the Des Moines Amusement Company. This claim has reference to "assets" other than money. We have already discussed the claim of the plaintiff concerning the alleged wrongful diversion of money.

It is alleged in plaintiff's petition that in July, 1922, the defendant found the operation of Des Moines Amusement Company unprofitable, and that, for the purpose of abandoning the same while pretending not to

do so, it wrongfully took and appropriated and converted to its own use all of the cash, capital, and assets, of every kind and character, which defendant had not previously converted, except only the lease, and for a nominal or no consideration sold the capital stock to Elbert and Getchell, who were required to change the name of the theater and permit no theatrical performances to be given therein of the character to which said theater had theretofore been used.

And, pursuing this charge, plaintiff asserts that defendant took from the Amusement Company the exhibition of "Orpheum vaudeville," and thereby took from the Amusement Company its good will, and that that business and the good will of the Amusement Company was separated from it, "not by any independent voluntary act of its own," but by the "abandonment of the theater and the appropriation and conversion by defendant of what the plaintiff had supposed were the assets of the Amusement Company."

The plaintiff is not justified in supposing this business was an asset of the Amusement Company. Plaintiff complains in this respect that the result of the contract for the sale of the stock by Orpheum Circuit, Inc., to Elbert and Getchell constituted a direct damage to the plaintiff, and relies upon this as the basis of his aforesaid charge.

The plaintiff cannot insist that the Orpheum had no right to sell its stock in the Amusement Company to Elbert and Getchell or to any one else. It is undisputed that the deal whereby Elbert and Getchell purchased the capital stock of the Des Moines Amusement Company from the Orpheum Circuit, Inc., was initiated by Elbert and Getchell and not by the Orpheum Circuit, Inc. It appears that Elbert and Getchell desired to obtain the use of plaintiff's theater as a playhouse in which to exhibit so-called "legitimate" attractions. In order to carry out their plan, it was necessary to provide another theater for the exhibition of the so-called "vaudeville"; so they proposed to the local manager of the Des Moines Amusement Company that the lease on plaintiff's theater should be assigned to them or to a corporation to be formed by them and that the Des Moines Amusement Company should lease of their wives (who held the lease thereof) the Sherman Theater. This proposition was transmitted by the local manager aforesaid to the officers of the Amusement Company, and thereupon Mr. Heiman and Mr. Kahane went to Mr. Strauss, who represented the plaintiff, and asked the consent of the plaintiff to the assignment of the lease. The plaintiff company would not consent to an assignment of the lease by Des Moines Amusement Company. Thereupon Orpheum Circuit, Inc., sold its stock in Des Moines Amusement Company to Elbert and Getchell.

The contract between Orpheum Circuit, Inc., and Elbert and Getchell, covering the sale of the stock, is primarily an agreement concerning the sale of the stock; the consideration to Elbert and Getchell being the transfer of stock and the covenants and warranties of the Orpheum Circuit, Inc., as to the fulfillment by the Des Moines Amusement Company of its obligations under the lease to and including the 30th day of June, 1922.

The consideration flowing to the Orpheum Circuit, Inc., as the price of the stock was the sum of $9,000, to be paid to it by Elbert and Getchell, and the covenants and agreements of Elbert and Getchell as potential stockholders of Des Moines Amusement Company, and the reservation of the right by Orpheum Circuit, Inc., the then stockholder, to the theatrical equipment, etc., owned by Des Moines Amusement Company, and located in the plaintiff's theater, as against any right of Elbert and Getchell upon the termination of the lease between Des Moines Amusement Company and the plaintiff.

The plaintiff urges that this contract indicates an undue and wrongful control of Des Moines Amusement Company and its assets by the Orpheum Circuit, Inc., and that it deprived the Amusement Company of its business, good will, and assets, and thereby rendered it unable to discharge its obligations to plaintiff on the lease and caused it to become insolvent. The contract was between Orpheum Circuit, Inc., and Elbert and Getchell, individually, and was in no sense a contract with or binding upon the Des Moines Amusement Company. Undoubtedly the sole stockholder of a corporation can exercise control over it. It is also undoubtedly true that the agreement of Elbert and Getchell to refrain from exhibiting a certain class of attractions at plaintiff's theater, resulted in shaping the future policy of Des Moines Amusement Company.

It is conceded that Elbert and Getchell carried out their undertaking as defined in the contract, and, exercising their power as stockholders of the Des Moines Amusement Company, elected themselves as directors and officers thereof and as such managed the affairs of the corporation. They changed the theater name to Iowa Theater, and did not exhibit the class of attractions, as agreed.

Plaintiff argues that, taking away the

name of Orpheum from its theater and the change in the policy in respect to the class of attractions exhibited there, took away from the Des Moines Amusement Company, the lessee of the theater, its business and good will.

[14] Plaintiff had no legal right to insist upon the continuance of the use of the name "Orpheum" as the name of its theater, nor had it any right to insist that the Des Moines Amusement Company continue to exhibit "Orpheum vaudeville" at its theater. The lessee, not the lessor under the lease, had the right to adopt whatever name he chose for the theater, and exhibit the character of attractions it desired. The lease merely says that the leased premises are to be used as a theater and for no other purpose. When Des Moines Amusement Company first commenced the operation of the theater under lease, the name was Majestic. Subsequently the name was changed to Orpheum. There is nothing in the lease prohibiting lessee from using whatever name it pleased and exhibiting whatever class of attractions it desired. The so-called "Orpheum vaudeville" attractions were merely those that were booked out of a certain booking office which are owned and controlled by Orpheum Circuit, Inc., for its organization. It is apparent Orpheum Circuit, Inc., desired to exhibit their own attractions. It may have been unfortunate for the plaintiff that the Orpheum Circuit, Inc., severed its connection with the Des Moines Amusement Company and desired to exhibit their attractions elsewhere, but the plaintiff had no right to insist that the attractions should be continued at its theater.

Orpheum Circuit, Inc., was in the business of holding stock in subsidiary operating corporations which exhibited so-called Orpheum attractions. That corporation desired to sell and had the right to sell its stock in Des Moines Theater Company under any conditions it might see fit to impose. If the contract it made with Elbert and Getchell was in violation of some duty it owed to plaintiff (which it was not), either contractual or otherwise, and damages resulted directly to the plaintiff by reason of such breach of duty, then the plaintiff company might have a cause of action against the Orpheum Circuit, Inc., to recover the same. No such claim is presented.

A further claim of wrong is urged by plaintiff in the alleged conversion by Orpheum Circuit, Inc., of the theatrical equipment, etc., the property of Des Moines Amusement Company, situated in the theater. Section 2 of the contract between Orpheum Circuit and Elbert and Getchell, provided that Orpheum Circuit, Inc., retained ownership of all the property, and assets, of every kind and nature of Des Moines Amusement Company, except the lease. Section 2 is modified by section 4 of the contract, wherein it is provided that Des Moines Amusement Company may, during the period of lease, continue to use all of said equipment, and at the termination of the lease shall surrender possession thereof to Orpheum Circuit, Inc. The equipment was valued at approximately $20,000.

[15] Being in the theater building, it was subject to the landlord's lien reserved by the plaintiff in the lease. All of the equipment remained in the theater and was there at the time plaintiff took possession of the theater in July, 1923, and at the same time the plaintiff took possession of this equipment and has retained it ever since. Orpheum Circuit, Inc., never did take any item of it, nor has it ever attempted to, and of course could not take it from the plaintiff who holds it by reason of the terms of the lease, giving the landlord a lien upon it for the rent. The fact is that there has been no conversion of the personal property in question and the plaintiff has not suffered any damage by reason of the contract in that regard.

Among the other assets Des Moines Amusement Company had when Orpheum Circuit, Inc., sold its stock to Elbert and Getchell, was the sum of $9,000 on deposit with plaintiff company; this being the balance unused of the original sum of $20,000 deposited by Des Moines Amusement Company under the lease. Elbert and Getchell, individually, paid to Orpheum Circuit, Inc., the sum of $9,000 as part of the purchase price of the stock they bought.

[16] The fund on deposit with the plaintiff company was not disturbed in any way, and remained an asset of the Des Moines Amusement Company, and has been absorbed by the plaintiff, pursuant to the lease. Obviously there was no taking of the assets by the Orpheum Circuit, Inc., by reason of the payment by Elbert and Getchell, individually, to it of the sum of $9,000.

The financial condition of Des Moines Amusement Company at the time the Orpheum Circuit, Inc., purchased the capital stock thereof, and its condition at the time Orpheum Circuit, Inc., sold its capital stock, is shown by the evidence to be as follows:

In February, 1920, when the Orpheum

Circuit, Inc., purchased stock of the Amusement Company, the Amusement Company possessed the following assets:

| | |
|---|---|
| On deposit with plaintiff company.. | $20,000.00 |
| Theatrical equipment appraised at.. | 20,000.00 |
| Total ..................... | $40,000.00 |

At the time Orpheum Circuit, Inc., sold the capital stock of the Amusement Company to Elbert and Getchell, the assets of the latter company were as follows:

| | |
|---|---|
| On deposit with plaintiff.......... | $ 9,000.00 |
| Theatrical equipment valued at .. | 17,500.00 |
| Total ..................... | $26,500.00 |

The difference between the amount of the assets at the time Orpheum Circuit, Inc., bought the stock, and the time it sold the stock in the Amusement Company, is the amount of rental paid out of the fund, viz. $11,000, plus the depreciation of the equipment at 15 per cent., $2,500.

During the time the Orpheum Circuit, Inc., was a stockholder of Des Moines Amusement Company, the contract liability of the Amusement Company to mature in the future was increased in exactly the amount required to be paid under the extension lease, which plaintiff estimates at $100,000. Had no extension of the lease been made, the original lease would have terminated May, 1923, with the rental paid out of the application of the lease deposit fund that plaintiff had, and upon termination plaintiff would have taken possession of its theater. The first installment of rent under the extension, that of May, 1923, was paid. The first default in payment of rent occurred June 1, 1923. Plaintiff then repossessed itself of the theater some time in July. Plaintiff has taken back its theater, together with all the theatrical equipment belonging to the Des Moines Amusement Company, valued at $17,500. Plaintiff did not collect rental for the months of June and July, 1923, but it has, as compensation for that loss, the actual equipment valued at $17,500, and thus now has its theater and the theatrical equipment.

Plaintiff, having made a contract, is entitled to enforce it, but, as it did not suffer any damages, it cannot recover any.

[17] We have carefully considered the record, and are satisfied that plaintiff has failed to establish any wrong or injustice practiced upon it by the Orpheum Circuit, Inc., or that that company has used the corporate entity of the Des Moines Amusement Company as a shield or otherwise, behind or through which it practiced any injustice on plaintiff, and plaintiff has thus failed to prove an essential element in the cause of action alleged.

3. We have carefully examined the record, and are satisfied that the evidence completely fails to justify plaintiff's claim that the Des Moines Amusement Company was used as an agency or mere adjunct or instrumentality of the defendant corporation. The Des Moines Amusement Company was an independent and duly incorporated corporation, owning the lease in question when Orpheum Circuit, Inc., purchased its stock in February, 1920.

[18] Exercising its legal right as a controlling stockholder, it elected directors of the Amusement Company. The directors elected were also directors or officers of the defendant company. That was the case as to each of the thirty-three subsidiary companies. In this way a liaison was formed among the companies and the business of all was co-ordinated. Each was benefited. Each had his own directors and officers, kept books of account, and each one conducted its business wholly separate from any other, paid dividends, and was handled as a separate corporation in all respects. It is undoubtedly true that the Orpheum Circuit, Inc., as the controlling stockholder, exercised a controlling influence over all of the subsidiary companies, but, as we have before said, the mere fact that one corporation exercised a controlling influence over another through ownership of the stock, does not operate to make either the agent of the other. Richmond, etc., Co. v. Richmond, etc., R. R. supra. Nor does the fact that the officers and directors of the stockholder corporation and the directors of the subsidiary are the same people, of itself, destroy the separate corporate entity. City of Holland v. Holland City Gas Co. (C. C. A.) 257 F. 679; Pullman's Palace Car Co. v. M. P. Ry. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499.

The plan of the Orpheum Circuit, Inc., operated to bring about a more economical and efficient conduct of the business of the subsidiary companies and furnish the public better attractions at less cost to the public. There was nothing harmful or unlawful in the scheme.

[19] The lower court found against the plaintiff on all of the issues of fact involved. The findings of the lower court have the force and effect of a verdict, and should not be disturbed, unless contrary to, or unsupported by, the evidence, or unless based on mistake, or erroneous conclusion as to a controlling

point of law. Crawford v. Neal, 144 U. S. 585, 596, 12 S. Ct. 759, 36 L. Ed. 552; Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664.

We are also of the opinion that the trial court would not have been justified in any other conclusion than that reached.

For the foregoing reasons the judgment of the lower court is affirmed.