**OLDHAM v. CHICAGO & N. W. RY. CO. et al.**
**No. 9076.**

Circuit Court of Appeals, Eighth Circuit.
Aug. 27, 1931.

112

Gale B. Braithwaite, of Sioux Falls, S. D. (U. S. G. Cherry, Holton Davenport, and J. F. Wickhem, all of Sioux Falls, S. D., and Windsor Doherty, of Winner, S. D., on the brief), for appellant.

Irwin A. Churchill, of Huron, S. D. (Lewis Benson, of Flandreau, S. D., on the brief), for appellees.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Relief in the nature of specific performance of a contract was asked by complainant, Harold A. Oldham, as against the defendants, Chicago & North Western Railway Company, a corporation, and Pioneer Town Site Company, a corporation. The contract relied upon recites:

"Whereas the Pioneer Town Site Company, a corporation of the State of Nebraska, is engaged in the business of purchasing lands and laying out town sites along the lines of railway of the Chicago and Northwestern Railway Company, and its proprietary lines in the States of Nebraska, South Dakota and Wyoming, and in selling the property so laid out into town lots; and

"Whereas the Chicago and Northwestern Railway Company contemplates the construction of a line of railway from Dallas, South Dakota, into and through Tripp County, South Dakota, upon which line a route as surveyed, staked out and located, it contemplates the location of three stations in Tripp County, South Dakota, north and west of the present town of Colome; and

"Whereas, the Pioneer Town Site Company has in contemplation the acquisition of lands at such stations, when located, for the purpose of laying out and marketing town lots, out of which it has reasonable expectations of considerable profit on its outlay; and

"Whereas Ernest A. Jackson, of Dallas, South Dakota, proposes that the Pioneer Town Site Company should give to him the privilege of securing lands for town sites at the three proposed stations along the line of said proposed route, upon the terms hereinafter stated;

"Now Therefore this agreement, made this twenty-ninth day of November, A. D., Nineteen hundred and nine, between the said Ernest A. Jackson, party of the first part, and the said Pioneer Town Site Company, party of the second part;

"Witnesseth:

"First: The said Ernest A. Jackson will pay upon the execution and delivery of these presents, to the Pioneer Town Site Company, the sum of Twenty-five Thousand ($25,000.-00) Dollars in cash, the receipt of which is hereby acknowledged.

"Second: The Pioneer Town Site Company agrees on its part that it will yield to said Jackson the privilege of securing lands and platting town sites at such stations on the proposed line of the Northwestern Company as it may locate in Tripp County, north and west of Colome, provided said Jackson will lay out and plat a reasonable town site at each of said stations, within a period of six (6) months after construction work is begun on said railroad, and that it will not itself secure lands or plat or sell town lots at said three stations, unless said Jackson shall fail to plat the same within said period of six (6) months.

"Third: The said Ernest A. Jackson will acquire, and, upon demand, convey to the said Pioneer Town Site Company, or to such corporation as it may direct, for the consideration of One Dollar, by good and sufficient Warranty Deed, free and clear from encumbrance, such right of way and station grounds at each of the stations to be located on said line of railway, north and west of Colome, as the said Pioneer Town Site Company, or such Railway Company as it may designate, may select.

"Fourth: The said Ernest A. Jackson will, upon demand convey by good and sufficient Warranty Deed to the said Pioneer Town Site Company, or such corporation as it may designate, for the consideration of One Dollar, such right of way over any other lands in Tripp County, South Dakota, now owned or controlled, or which may hereafter be owned or controlled by the said Ernest A. Jackson before the construction of said line of railway, which may be crossed by said located line of railway, as said Pioneer Town Site Company or such Company as it may designate, may deem necessary for the prop-

er construction, operation and maintenance of said railroad, including cuts and embankments, such right of way to be in no case less than one hundred (100) feet in width.

"Fifth: The Pioneer Town Site Company will also use its best endeavors to secure the location of a station on Section Twenty (20), Township Ninety-nine (99), (Winner), North of Range Seventy-six (76) west of the Fifth Principal Meridian, when the railroad shall be constructed to that point. Whenever said Chicago and Northwestern Railway Company shall extend its line west of Section Twenty (20), Township Ninety-nine (99), (Winner), North of Range Seventy-six (76), the Pioneer Town Site Company will use its best endeavors to secure the location of stations, one on the North half of Section Twenty-three (23), Township Ninety-nine (99), North of Range Seventy-eight (78), one on the South half of Section Sixteen (16), Township Ninety-nine (99), North of Range Seventy-nine (79) or the Northwest Quarter of Section Twenty-one (21), Township Ninety-nine (99), North, of Range Seventy-nine (79) (provided the railroad shall be located across the above described lands), or as near thereto as would be practicable, and to the best interests of the said Railway Company.

"Sixth: It is understood and agreed between the parties hereto that the Pioneer Town Site Company assumes no duty or obligation for the location or construction of said proposed railroad, either on its own behalf or on behalf of the Chicago and Northwestern Railway Company, at any time. It is also understood and agreed that the Pioneer Town Site Company does not undertake to designate the points at which stations may be located upon said line of railroad.

"Seventh: This agreement shall have no effect upon the Chicago and North-Western Railway Company, its rights or duties under the law.

"In Witness Whereof the Pioneer Town Site Company has caused these presents to be executed by its President and Secretary, and its corporate seal to be hereto affixed, and the said Ernest A. Jackson has set his hand and seal hereto the day and year first above written.

"Ernest A. Jackson [Seal.]
"Pioneer Town Site Company,
"[Corporate Seal.]      By Marvin Hughitt,
"President.
"Attest: J. B. Redfield, Secretary.
"Approved: J. F. Cleveland, Land Commissioner."

The bill of complaint alleges, in substance, that shortly after the execution of the contract the railway company located its line to and designated stations at Winner (on section 20) and at Jordan (on north half northeast quarter of section 23) and at Carter (on southwest quarter of section 16), all in Tripp county, S. D., and proceeded to and did construct and extend its line of railroad to Winner; that the road was not extended beyond Winner until 1929 and then the proposed route was changed and the road is being built on a route that will miss Jordan and Carter from three to five miles. The town sites having been platted on the proposed route, the deflection therefrom will greatly damage the plaintiff, who purchased the contract and real estate formerly owned by Jackson.

The bill further alleges that the town site company was organized by the railway company, its capital stock owned and controlled by the officers and agents of that company, and the earnings were paid to the railway company; that the contract was executed by the town site company as the agent and as a subsidiary of the railway company and afterwards ratified by it, and that the contract was in truth and in fact the contract of the railway company. That Jackson paid the substantial cash consideration, conveyed the land for the station at Winner and certain right of way through his lands as provided by the terms of the contract, and performed other services, all of which benefits were received and retained by the railway company.

From these allegations the complainant claims, first, that the contract should be considered as having been executed by the railway company and its sole obligation; second, that the railway company is estopped from denying that it is bound by the terms of the contract; and, third, that to permit such a denial would be inequitable and a fraud upon the plaintiff.

The prayer of the complaint is that the defendants, and particularly the railway company, be compelled to specifically perform the contract, and that it be restrained from building its line over any other route than through Jordan and Carter in Tripp county, S. D.

A motion to dismiss the bill of complaint on the ground that it did not state facts sufficient to constitute a valid cause of action in equity was sustained, and the sole question involved on this appeal is whether it was error to dismiss the bill.

The question for determination is whether the contract requires and the court can or should by virtue of the terms thereof and under the law order the railway company to construct an extension of its road to and locate stations at Jordan and Carter.

A railway company is bound to select its route and locate its stations as will best serve its own and the public interests rather than the speculative interests of its officers and stockholders or land speculators, and public policy prevents agreements that might prejudice either the railway company or the public's welfare. Thus contracts which limit the power of a railroad to locate and relocate its stations, as where they prohibit the location of a station at a designated point, or within certain prescribed limits, or contracts by officers, agents, or stockholders of a railroad for their own gain to secure the location of stations at certain places, are void as against public policy. 51 C. J. 493; Woodstock Iron Co. v. Extension Co., 129 U. S. 643, 662, 9 S. Ct. 402, 32 L. Ed. 819; C., M. & St. P. Ry. Co. v. Minn. Civic Ass'n, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; U. S. v. Reading Co., 253 U. S. 26, 40 S. Ct. 425, 64 L. Ed. 760; Farrington v. Stucky (C. C. A.) 165 F. 325; Wabash Ry. Co. v. American Refrigerator Transit Co. (C. C. A.) 7 F. (2d) 335; Bishop v. U. S. (C. C. A.) 16 F. (2d) 410. And the Supreme Court of South Dakota has held, although the opinion was rendered subsequent to the execution of the contract here involved, that a contract giving an exclusive right to land speculators to select and lay out a town site at a particular place on a proposed line prevents other persons indirectly from locating town sites along its line and is in direct conflict with the trust duties a railroad company owes the general public and that such contract is illegal and void. Minn., D. & P. Ry. Co. v. Way, 34 S. D. 435, 148 N. W. 858, L. R. A. 1915B, 925. And section 493, Rev. Civil Code of 1903 South Dakota, in effect at the time the contract was executed, reads as follows:

"The board of directors of every railroad corporation may * * * at any time alter the route or any portion of the route of their road, or any extension or branch thereof, or part of their road, or any extension or branch as constructed, if it shall appear to them that the line can be improved thereby. * * * *"

The foregoing rules are reflected in the carefully worded contract. It is apparent that both the railway company and its agent, the town site company, were endeavoring to create such obligations only as might not interfere with any questions of public policy.

The complainant seeks principally to hold the railway company, and contends that the contract was the contract of the defendant railway company as well as that of the defendant town site company. This conclusion is contended for under a rule of equity which provides that, where a stock ownership in a subsidiary corporation has been resorted to for the purpose of controlling such subsidiary company so that it may be used as a mere agent or instrumentality of the owning company, "the courts will not permit themselves to be blinded or deceived by mere forms or law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." Wabash Ry. Co. v. American Refrigerator Transit Co. (C. C. A.) 7 F. (2d) 335, 344; Majestic Co. v. Orpheum Circuit (C. C. A.) 21 F. (2d) 720, 724; Owl Fumigating Corp. v. Calif. Cyanide Co. (C. C. A.) 30 F. (2d) 812. The rule is stated in different ways in the foregoing authorities; one theory being that announced by Judge Sanborn in the case of U. S. v. Milwaukee Refrigerator Transit Co. (C. C.) 142 F. 247, 255, as follows: "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." Hunter v. Baker Motor Vehicle Co. (C. C.) 190 F. 665; Linn & Lane Timber Co. v. U. S. (C. C. A.) 196 F. 593; Smith v. Moore (C. C. A.) 199 F. 689; M. Lowenstein & Sons v. British-Am. Mfg. Co. (D. C.) 300 F. 853; Majestic Co. v. Orpheum Circuit, supra.

The foregoing rules have been relied upon by courts of equity to defeat attempts to evade the law, to escape obligations, or to perpetrate inequity or fraud. Owl Fumigating Corp. v. Calif. Cyanide Co., supra. There is no allegation in the bill in this case that would tend to bring the relationship of the two defendants within any of these inhibitions. There is nothing alleged in the bill that would tend to show other than that the contract was openly and fairly entered into between the parties and with the full knowledge of the relationship, duties, and obligations that existed between the parties, and the defendants, at that time. From all that

appears it was a valid agreement binding upon the parties, their successors or assigns.

■ The right of a railway company as a stockholder to use its stock ownership for the purpose of providing separate administration of the affairs of the corporation in which it has a stock interest may not be denied. U. S. v. Lehigh Valley R. R. Co., 220 U. S. 257, 274, 31 S. Ct. 387, 55 L. Ed. 458; Wabash Ry. Co. v. American Refrigerator Transit Co. (C. C. A.) 7 F.(2d) 335, 346.

The appellant would have us go further than to declare that the railway company was the contracting party, and, having so found, would have us declare that the terms in the contract, "will use its best endeavors to secure the location of stations," should be construed as constituting a promise on the part of the railway company to locate stations on lands then owned by Jackson. But the terms of the contract are such as to indicate that the parties thereto were careful not to bind the railway company to any such promise. To so construe the contract would require the court to reform the contract and then order its specific performance. If we should consider the railway company as a party to the contract, such a construction would bind the railway company to the performance of an obligation beyond the terms of the contract, and certainly the railway company, even if a party thereto, cannot be bound beyond the express terms of the agreement. The language used by the Supreme Court in Dillon v. Barnard, 88 U. S. (21 Wall.) 430, 438, 22 L. Ed. 673, is applicable: "This is not the case of a bill to set aside or reform the contract as not expressing the actual intention of the parties. It is a case where the contention arises solely upon the meaning of the indenture in its bearing upon the contract, and that must be ascertained by applying to its language the ordinary rules of interpretation."

Neither do we think there are any allegations that would amount to a fraud on appellant or estop the railway company from claiming the contract was binding alone on its agent, the town site company. The consideration moving to Jackson was the refraining by the town site company to interfere with his platting town sites on the then proposed route and using its endeavors to procure the location of stations on his lands. The facts pleaded in the bill would warrant a court in finding that the town site company was an agent and subsidiary of the railway company, but this relationship appears from the contract itself and was known to Jackson

when the contract was executed. The performance by Jackson of the obligations assumed in the agreement or the rendering of other services performed in the hope and expectation on his part that the railway company would construct its line through his real estate does not prevent the railway company from insisting that the consideration therefor specified in the contract should be the limit of his rights thereunder. Nor would the retention of the benefits received by the town site company or the railway company, or both, secured under the terms of the contract, constitute a fraud as against plaintiff, as the bill of complaint as well as the contract itself shows that Jackson knew of the relationship between the railway company and the town site company, and fraud cannot under the facts here presented be predicated upon such a known relationship.

■ Considering the contract in its entirety, it cannot be said that there is any binding agreement therein by the town site company, let alone the railway company, that the line would be designated through complainant's lands or the stations located thereon. Indeed, the contract was executed before the tentative route or stations were selected and the contract by its terms expressly assumes no obligation to construct the proposed road along any particular route or to locate stations at any particular place, and was by its terms to have no effect upon the rights of the railway company to change the proposed route, if desired.

But, even though we were to determine that the contract was valid when made, that the railway company should be considered as a party thereto, and that the contract should be interpreted as binding the railway company to locate its stations on lands owned by Jackson at the time the contract was entered into, still the express terms of the contract defeat the rights of the complainant to the relief asked by him in his complaint. It will be noted that the contract uses different language with reference to the location of the Winner town site from that used in reference to the town sites of Jordan and Carter. The language with reference to the location of town sites at Jordan and Carter commenced with the phrase: "Whenever said Chicago & North Western Railway Company shall extend its line west of Section Twenty (20) (Winner), * * * the Pioneer Town Site Company will use its best endeavors to secure the location of stations (at Jordan and Carter), (provided the railroad shall be located across the above described lands)." From

this it is evident that it was not the intention of the railway company to extend the line west from Winner at that time, and by the word "located" within the proviso from the context is clearly meant the location at the time, if ever, when the railway company should extend its lines west of section 20. No rule of equity appears why sections 6 or 7 of the contract should be disregarded.

The sustaining of the motion by the trial court to dismiss the complaint was correct, and the dismissal of the bill of complaint is affirmed.